**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| **VERNON DALE HALE,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| **vs.** ) | **Case No.** |
| ) | |
| **LYNN SHRUM, dba SMITH COUNTY** ) | **JURY DEMAND** |
| **MISDEMEANOR PROBATION,** ) | |
| ) | |
| **SMITH COUNTY, TENNESSEE** ) | |
| ) | |
| **JENNA MENESS, individually and** ) | |
| **dba** ) | |
| **SMITH COUNTY MISDEMEANOR** ) | |
| **PROBATION** ) | |
| ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

_____

**COMPLAINT**
_____

COMES NOW Plaintiff, VERNON DALE HALE, and files this Complaint and in
support of which would state as follows:

**<u>INTRODUCTION</u>**

Appalling.  That is the only word that is appropriate for the constitutional violations
and pervasive corruption that is present in the Smith County probation system.  The
conduct is so shocking that the facts could have been written by John Grisham and set in
Clanton, Mississippi.  Unfortunately, these facts are real and take place in Carthage,
Smith County, Tennessee.  Unlike Grisham's characters who are often vindicated in his
novels, Mr. Hale was exploited by a probation system driven by greed, threats of

1

incarceration, actual incarceration, denial of counsel, illegal warrants, and illegal probation extension. When Smith County was made aware of this type of conduct was occurring in the county, they did nothing to stop it. Instead, the County opted to take a "wait and see" approach and to evaluate case on a "case by case" basis, which resulted in Mr. Hale remaining on his illegally extended probation for at least another six (6) months. However, when Smith County became aware they were going to be sued, they *sua sponte* began releasing defendants who were known to be on illegally extended probation. In fact, Mr. Hale was released from probation the very day the first federal lawsuit was filed, *Lynn Walker vs. Lynn Shrum, dba Smith County Misdemeanor Probation vs. Smith County, Tennessee, vs. Jenna Meness, individually and dba Smith County Misdemeanor Probation*, Case No. 2:21-CV-00025, in the United States District Court for the Middle District of Tennessee.

The Plaintiff, who is living in poverty, has been a victim of an extortion scheme by which the Defendants have conspired together to systematically extract money from him. Essentially the scheme is Smith County funnels misdemeanor probation cases to a privately owned company, Smith County Misdemeanor Probation (hereinafter "SCMP" or "the private company"). After a probationer is convicted of a minor misdemeanor offense, the private company then uses threats of incarceration to compel probationers to pay probation fees to SCMP and pay their fines, costs, and court fees to the Smith County Clerk's Office.

Until very recently, the Plaintiff in this case has been a hard-working individual for most of his life. Plaintiff has an injured his rotator cuff and is need of back surgery. At the time he was placed on probation, he was living in Smith Co. but employed in upstate New

York replacing lights on skyscrapers. He lost that job because he was having to drive seventeen (17) hours back to Tennessee to report to probation weekly. When he tried to talk to probation about allowing him to report less often, he was told he could only go unsupervised if he paid all of his probation fees and court cost, which clearly demonstrates the private company was motivated by money. He then lost two (2) other jobs that were local because of the reporting requirements demanded by SCMP.

In order to pay his probation fees and due to his indigency, Plaintiff took out a loan from a predatory lender to pay his utility bills. Plaintiff continues to struggle financially and currently cannot even afford a cell phone and is in immediate danger of having his vehicle repossessed.

## NATURE OF THE ACTION[1]

1.     Smith County and SCMP entered into a verbal contractual agreement to give complete control of the misdemeanor probation system of Smith County to a private, for-profit company.

2.     There is no written contract on file between Smith County and SCMP.

3.     This unwritten agreement between Smith County and SCMP gives rise to supposedly neutral "probation officers," who in reality have a direct financial stake in every decision and outcome in any probation case, including the Plaintiff's case. This arrangement violates basic notions of due process, neutrality, and fairness as those concepts have been understood since the genesis of the American legal system.

4.     This unwritten agreement between Smith County and SCMP operates to

---

[1] Plaintiff makes the allegations in this Complaint based on personal knowledge as to matters in which he has had personal involvement and on information and belief as to all other matters.

provide a user-funded model of probation, in which probationers must pay (under the threat of arrest, incarceration, and repeated revocation and extension of their probation) a variety of fees and surcharges to the private company in addition to their court debts.

5.     SCMP earns revenue and profit through payments from the probationers they supervise.

6.     SCMP repeatedly threatens misdemeanor probationers with arrest and physical confinement if they do not make payments.

7.     SCMP employees tell probationers nonpayment will result in SCMP employees "violating" them, i.e., alleging to the court in a sworn statement that the probationer has violated a condition of probation and ask the court to issue an arrest warrant or a citation warrant.

8.     In an appalling breakdown of the legal system, the private company was provided with stacks of blank, pre-signed violation of probation warrants from Smith County General Sessions Judge Michael Collins[2]. The private company uses these pre-signed warrants to emphasize the threat of incarceration if the probationer fails to make payments at the private company's arbitrary pace. Even more shocking to the conscience, employees of the private company, masquerading as "probation officers", fill out these blank arrest warrants without appearing before the court or even consulting with Judge Collins, and enlist members of the County's local police force to execute these arrest warrants. Thus, probationers are arrested and incarcerated at the

_____

[2] Judge Collins is no longer the General Sessions Judge in Smith County. He is currently serving as Circuit Court Judge for the 15th Judicial District.

4

sole discretion and maniacal whims of an employee of a private company, without a judge ever determining whether probable cause exists to support the arrest.

9. Further, SCMP employees tell probationers that "violations" will result in an extension of "pay-only" probation, during which time probationers accrue more fees owed to the private companies, including weekly supervision fees and discretionary drug testing fees, and that non-compliance with other conditions of probation - including nonpayment - will also result in incarceration and extension of probation.

10. However, Defendants never disclose to Plaintiffs during this process that only willful nonpayment can constitute a violation of probation.

11. As a matter of practice, SCMP employees do not inform probationers of this law and their basic rights.

12. Defendants routinely threaten to seek violation-of-probation warrants for probationers who are too poor to make payments or whose payments fall short of the probation officer's arbitrary demands, without ever confirming that the nonpayment was willful.

13. This illegal arrangement between Smith County and SCMP gives SCMP an enormous amount of discretion, wholly separate from the illegal practice of drafting and executing arrest warrants without judicial, clerk, or commissioner approval.

14. The employees of SCMP have complete autonomy to notify the court of alleged non-compliance with conditions of probation, seek and prepare probation revocation warrants, act as the main witness and present evidence at revocation proceedings, confer with judges and prosecutors on bond amounts for violation of probation warrants, including whether the arrested probationer should be held without

5

bond until the revocation hearing, and directly negotiate sentences and sanctions.

15.     Defendants' extortion scheme constitutes a systematic violation of constitutional rights calculated to generate profits for the private company and provide the payment of court debts to the County.

16.      The Plaintiff seeks declaratory, injunctive, compensatory, and punitive relief.

## JURISDICTION AND VENUE

17.     This is a civil rights action arising under 42 U.S.C. § 1983, 18 U.S.C. §1964(c) ("RICO"), and 28 U.S.C. § 2201, *et. seq*. and the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution under 28 U.S.C. § 1331, 28 U.S.C. § 1343.

18.     The Court has supplemental jurisdiction over any state law causes of action asserted in this Complaint pursuant to 28 U.S.C. § 1367 because the state law claims stem from part of the same case or controversy as the federal law claims.

19.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

20.     Plaintiff Vernon Dale Hale is sixty (60) years old and resides in Smith County, Tennessee.

21.      Defendant Smith County Misdemeanor Probation, hereinafter referred to as "SCMP", is a sole proprietorship founded by Defendant Lynn Shrum, and owned by her until September or October 2020.

22.      In September or October 2020, SCMP was purchased by Defendant Jenna Meness.

23.      SCMP is headquartered in the Smith County Courts Facility, located at

6

322 Justice Drive, Carthage, Tennessee 37030.

24.     Defendant Smith County, Tennessee, hereinafter referred to as "Smith County", is a municipal government entity organized under the laws of the State of Tennessee.

## Factual Background

### A.     The Private Probation Scheme in Smith County

25.     SCMP oversees all misdemeanor probation for the Smith County judicial system and has done so since its inception in 1999. Although SCMP began operating in 1999, SCMP's initial licensure date with the Tennessee Private Probation Services Council is listed as December 21, 2005.

26.     Lynn Shrum owned SCMP as a sole proprietorship from its inception until September or October of 2020.

27.     There is no contract available from either Smith County or SCMP regarding the provision of misdemeanor probation services.

28.     By law, Tennessee requires a contract to exist between Smith County and SCMP. Rules of Tenn. Private Probation Services Council, R. 1177-02-.03.

29.     As required by law, the contract between Smith County and SCMP "shall state at a minimum:

a.     Extent of the services to be rendered by the private entity providing the probation services;
b.     Any requirements for staff qualifications, to include those required by statute and rules, as well as any surpassing those required by statute and rules;
c.     Requirements for criminal record checks of staff in accordance with the requirements of statute and rules;
d.     Policies and procedures for training of staff;
e.     Bonding of staff and liability insurance coverage;
f.     Staffing levels and standards for offender supervision, including frequency and type of contacts with offenders;

7

g.      Procedures for handling the collection of all court ordered fines, fees, and restitution, and for handling court ordered community service and treatment;
h.      Procedures for handling indigent offenders to ensure placement of such offenders despite their inability to pay;
i.      Circumstances under which revocation of an offender's probation may be recommended;
j.      Reporting and record keeping requirements; and
k.      Default and contract termination procedures."

Rules of Tenn. Private Probation Services Council, R. 1177-02-.03.

30.      Because there is no contract between Smith County and SCMP, both parties have operated in violation of Tennessee law for the duration of their contractual relationship.

31.      In September or October of 2020, Defendant Lynn Shrum entered into an owner financed sale of SCMP to Defendant Meness[3].

32.      The highest level of education attained by Defendant Meness is a high school diploma. Defendant Meness may be taking courses to receive an associate's degree, but did not have that degree when she became the owner of SCMP, and remains without that degree as of the filing of this Complaint.

33.      By law, Tennessee requires that the chief executive of any private entity that provides misdemeanor probation supervision must have a bachelor's degree from an accredited university in a specific field[4], as well as experience in criminal justice or social work.

34.      The only exception to the bachelor's degree prerequisite requires at least

---

[3] At the time of the purchase, Jenna Meness' name was Jenna Brooks. Jenna Brooks married Christopher Meness in 2019, and Ms. Brooks changed her name thereafter.
[4] The only acceptable degrees, as listed in Tenn. Code Ann. §40-35-302(g)(I)(B) and the Rule of the Tennessee Private Probation Services Council, R. 1177-01-.06, are criminal justice, administration, social work, or the behavioral sciences.

8

four (4) years professional administrative experience in an organization providing services in criminal justice or social work and requires application to and approval of the Tennessee Private Probation Services Council. Tenn. Code Ann. § 40-35-302(g)(l)(B); *see also* Rules of Tenn. Private Probation Services Council, R. 1177-01-.06.

35.     Defendant Meness does not have the required education level and never applied for a waiver with the Tennessee Private Probation Services Council.

36.     Thus, Defendant Meness has been operating SCMP in violation of Tennessee law and the Tennessee Private Probation Services Council Rules since the day she became the owner of SCMP.

### i.     How People Are Assigned to SCMP

37.     In Smith County, misdemeanor cases are generally resolved in the General Sessions Court.

38.     A person may plead guilty to a misdemeanor offense in Smith County Circuit Court if the charge was originally filed as a felony.

39.     Individuals sentenced to probation are assessed a variety of fines and fees, both to punish the individual for the offense and to pay for municipal services, court costs, and litigation taxes.

40.     These fines and fees are imposed without regard for the individual's ability to pay.

41.     An individual who pleads guilty to a misdemeanor is rarely told at the time of pleading guilty how much he or she will owe.

42.     Although the details of a misdemeanor sentence can vary significantly, the typical sentence is 11 months and 29 days in jail suspended to 11 months and 29

9

days of probation.

43.     Sentences can range from the entire sentence to serve in jail to the entire sentence suspended to probation.

44.     However, the vast majority of misdemeanor pleas in Smith County result in nearly the entire sentence suspended to supervised probation.

45.     Pursuant to the arrangement with the County, every misdemeanor offender sentenced to probation in Smith County must be assigned to supervision by SCMP.

46.     In many cases, probationers are sentenced to a minimum period of supervised probation, regardless of the length of their sentence.

47.     During the mandatory supervised probation, the probationer must report to SCMP, submit to observed drug tests administered completely at SCMP's discretion, and make regular payments of court costs and probation fees under the constant threat of arrest and revocation.

48.     After the minimum period of supervised probation, the remaining probationary period will be converted to unsupervised probation if all court costs and probation fees have been paid.

49.     If there is no required minimum period of supervised probation, the probationer will be supervised at least "until paid in full." In the Plaintiff's case, he was kept on supervised probation even after completing all his requirements and paying all court costs and fees.

50.     Individuals who can afford to pay in full are permitted to pay their court costs at their first probation meeting, along with the required probation fees, and SCMP

will notify the court staff to convert the individual's probation to unsupervised probation.

51.     If a probationer is sentenced to supervision "until paid in full," but the probationer cannot afford to pay all of their costs at once, the probationer must continuously report to SCMP, submit to invasive drug tests, and pay supervision fees to the companies.

52.     Probationers face arrest warrants, revocation, additional fees, and extension of their for-profit supervised probation (and thus additional supervision fees) if they do not pay their entire court costs and probation fees by the end of the probationary period.

53.     Other conditions are sometimes required of probationers - such as the Plaintiff's requirement to complete a Victim Impact Panel, Alcohol and Drug Assessment and the accompanying alcohol and drug assessment class.

54.     The Alcohol and Drug Assessments are offered by SCMP and Defendant Meness.

55.     If the accompanying alcohol and drug assessment classes are required as a result of the assessment - which are required of many probationers, regardless of their original charges - the probationer is required to take a twelve-week course. This course occurs during the week, often requiring probationers to take even more time off work. Of course, these assessments and classes result in yet more fees to SCMP.

56.     When probationers have difficulty finding classes to satisfy this requirement, especially during the limited in-person classes offered since early 2020 due to COVID-19, SCMP employees are unable to offer any information about the classes, where to register for them, or any alternative classes that would be acceptable.

ii. **"Supervision" by SCMP**

57.     On the day an individual is assigned to supervised probation, probationers are required to have an initial meeting with the SCMP representative present in the courtroom.

58.     Upon information and belief, there is no policy by which the County or SCMP provides for waiving the class fees for indigent probationers.

59.     Often supervision by SCMP includes additional requirements of probationers, which increase SCMP's profit. One such requirement is the alcohol and drug assessment, which is required of many probationers regardless of their underlying charge.

60.     Probationers are required to submit to and pay for suspicionless drug tests at SCMP's discretion, yet another cost added to the SCMP fees. SCMP charges $35 per test to perform the in-house drug test.

61.     SCMP uses a drug-testing kit, administered in the office, that purports to provide immediate results without laboratory analysis.

62.     If probationers wish to have the results of the in-office test verified by an actual laboratory examination, the probationer must pay an additional fee to SCMP to send the urine sample to the lab for a confirmatory test.

63.     The Private Probation Defendants drug test probationers more frequently near the end of a supervised probation period. This makes it more likely that probationers will violate a condition of probation by testing positive for drugs, refusing to submit to the drug test, or being unable to pay for the drug test, resulting in their probation being revoked and extended - and, of course, more fees for SCMP.

12

64.     SCMP runs their probation operation out of an office located within the Smith County Court Facility in Carthage.

65.     SCMP has primary reporting days for probationers each week.

66.      Probationers are required to report in person to their probation officer on their primary reporting day.

67.     SCMP decides how frequently a person must report. SCMP typically requires a probationer to report every week.

68.     Although SCMP has discretion to allow a probationer to report less frequently, SCMP forces probationers who cannot pay to report weekly for nearly the entire duration of their probation.

69.     The main purpose of probation meetings is for probationers to make payments. The weekly fee to SCMP is at least $10 or more if the probationer has incurred any additional fees. This does not include the amount the probationer must pay to the court clerk for court costs and litigation expenses each week.

70.     The supervision meetings typically last between five (5) and ten (10) minutes, depending on whether the probation officer decides to require a drug test that day.

71.     During these meetings, the probation officers tell probationers they must make their regular payments of court costs and SCMP fees.

72.     If the probationer is behind on payments, the probation officer will threaten probationers with arrest, incarceration, revocation, and/or extension of supervised probation, telling the probationer that they will be "violated" if they fail to make payments.

73.     The probation officers have discretion to obtain violation-of-probation

warrants for nonpayment if a probationer does not pay the amount demanded by the probation officer.

74.    The probation officers make it clear to the probationers that if they do not pay, they will be "violated" and be incarcerated.

75.    These threats are substantiated by the probation officer's access to pre-signed warrants that need not even go before a judge before they can be executed on the probationer.

76.    After spending the duration of the supervised probation meeting threatening the probationer with incarceration for nonpayment, the probation officers inform probationers they will be required to extend their probation if all court costs are not paid by the end of probation.

77.    As a matter of practice, SCMP does not inform probationers of their basic rights and refuses to consider alternative options for probationers who are financially unable to pay.

### iii.    The Defendants' Contract and the "User-Funded" Model

78.    Unfortunately, there is no contract available to determine the exact nature of the relationship between Smith County and SCMP.

79.    Either no contract was ever signed between Smith County and SCMP or a contract was signed but none of the Defendants are able to locate the contract.

80.    SCMP has operated as the exclusive provider of misdemeanor probation services in Smith County since its inception in 1999.

81.    However, SCMP was not licensed with the Tennessee Private Probation Council until December 21, 2005.

82.     SCMP operates on the funds they receive from their probationers.

83.     Without acquiring new probationers or extending current probationers on longer sentences, SCMP's revenue stream would cease.

84.     Unless one takes into consideration the income stream generated by their behaviors, SCMP's actions are often puzzling - such as requiring virtually every probationer to attend an alcohol and drug assessment class or performing disproportionate numbers of drug tests near the end of a probationer's sentence.

### iv.     SCMP Revocation Process

85.     SCMP has an undeniable financial stake in using alleged probation violations to extract more money from probationers. This provides an incentive to use the reporting and revocation process to maximize their revenues.

86.     SCMP has a financial stake in advising the judge to issue violation-of-probation warrants and extend a probationer's sentence.

87.     Given the common practice of Judge Collins signing stacks of blank warrants and providing them to SCMP to fill out after the fact, SCMP has the ability to act as probation officer, judge, and enforcer by filling out pre-signed warrants, executing them with local County law enforcement, and arresting probationers without ever going before a judge, clerk, or commissioner to review the warrant.

88.     SCMP continually threatens probationers and creates a culture of fear where probationers believe that the company can find a way to "violate" their probation at will if the company wants more money.

89.     If a probationer is arrested for allegedly violating probation and is either unable to pay monetary bail to secure release or held without bond, he would be taken

from the jail to the Smith County courthouse in an orange jumpsuit and shackles.

90.     Arrested probationers who were able to pay a money bail required for release appear on that docket in civilian clothes.

91.     Probationers accused of violating their probation will be offered a few minutes to consult with the public defender.

92.     The SCMP probation officers sit in the courtroom during the court proceedings, including probation revocation proceedings.

93.     The SCMP probation officers confer with judges, court staff, and the Assistant District Attorney General on individual cases.

94.     The SCMP probation officers engage in *ex parte* conversations about probationers with the judge and prosecutor often before, during, and after revocation of probation hearings.

95.     The probation officer directly negotiates and offers evidence at the hearing and when violations concern willfulness, no evidence is offered or inquired about.

96.     The for-profit probation officer's involvement in the revocation hearing almost exclusively includes urging the judge to sentence the probationer to incarceration and extend the probationer's sentence of supervised probation.

97.     The SCMP probation officers' allegations are routinely the sole basis provided to support revocation.

98.     The SCMP probation officer recommends incarceration for a least thirty (30) days for nearly every violation of probation. Additionally, if the probationer's probation sentence is about to expire, SCMP probation officers will ask for an extension of probation in nearly every instance.

16

99. These specific recommendations serve two purposes for SCMP: (1) give veracity to the probation officer's threats of incarceration to probationers who do not pay enough money, and (2) convey to probationers that the company exerts nearly unlimited influence over all decisions regarding the County's probation system, including the judge.

100. Extending supervised probation also guarantees Private Probation Defendants an income stream from probationers in the future.

101. Neither the Private Probation Defendants nor Smith County informs probationers that their ability to pay is a critical issue at a revocation proceeding regarding nonpayment, resulting in their probation being revoked and extended without ever making a determination that nonpayment was willful.

## CUSTOMS AND POLICIES OF SMITH COUNTY AND DEFENDANT SCMP

102. Defendant Smith County is responsible for operating the Smith County Jail, prosecuting criminal and traffic offenses, providing for a lawful probation supervision system, and supplying adequate indigent defense services.

103. Pursuant to the laws of the State of Tennessee, Defendant Smith County is responsible for prosecuting all misdemeanors and sentencing all defendants found guilty of a misdemeanor crime.

104. Defendant Smith County is also responsible for providing a system of probation for defendants convicted of misdemeanor crimes when such defendants are sentenced to serve a term of probation.

105. At all times relevant to this Complaint, Defendant SCMP is responsible for overseeing and managing all misdemeanor probation for Smith County,

17

Tennessee pursuant to an oral contract (hereinafter "oral contract" or "contract) with Defendant Smith County.

106. At all times relevant to this Complaint, misdemeanor probations arising out of convictions in Smith County are overseen by SCMP, pursuant to the contract between Smith County and SCMP.

107. From 1999 until September or October of 2020, Lynn Schrum owned and operated SCMP as the chief executive.

108. Pursuant to Tennessee law and the Rules of Tenn. Private Probation Council, the chief executive of a private entity that provides misdemeanor probation supervision must have a bachelor's degree from an accredited university in the field of criminal justice, administration, social work, or behavioral sciences. Alternatively, the executive must have four (4) years of professional administrative experience in an organization providing services in criminal justice or social work and must apply for and receive a waiver from the Tennessee Private Probation Services Council. At all times relevant to this Complaint, Lynn Shrum did not have a bachelor's degree in any subject, she did not have the experience required to receive a waiver of the bachelor's degree requirement, and she never applied for or received a waiver from the Tennessee Private Probation Services Council.

109. In violation of Tennessee law and the Rules of Tenn. Private Probation Council Smith County illegally contracted with SCMP despite Lynn Schrum being ineligible to serve as the chief officer of SCMP.

110. The relationship between Smith County and SCMP provides for a user-funded model of probation.

111. SCMP is a for profit entity and receives revenue from the fees generated from overseeing the probation of all misdemeanor probationers.

112. Pursuant to the contract between Smith County and SCMP, SCMP has a direct financial stake in causing individuals to remain under probation as long as possible in order to accrue fees.

113. Pursuant to the contract between Smith County and SCMP, SCMP is responsible for reporting all alleged violations of probation for individuals under its supervision.

114. At all times relevant to this Complaint, after the probationer is arrested, he or she appears before Judge Michael Collins for a hearing to determine whether a Revocation Order will be entered, revoking the probationer's probation due to an alleged violation of probation.

115. At all times relevant to this Complaint, SCMP employees were regularly present for violation of probation hearings and made recommendations to prosecutors and to Judge Michael Collins regarding whether probation should be revoked.

116. At all times relevant to this Complaint, SCMP employees were regularly present for violation of probation hearings and made recommendations to prosecutors and Judge Michael Collins regarding the sentencing of probationers if they were found guilty of violation of their probation, including whether probationers should be incarcerated, whether probationers should be granted bond, how long probationers should be incarcerated, and whether probationers' term of probation should be extended.

117. SCMP has a financial stake in reporting violations of probation and extending terms of probation due to the user funded model of probation.

19

118. SCMP is responsible for setting a schedule on which probationers must make payments toward court fines, court costs, and probation fees. Probationers do not have input regarding the fee schedule. SCMP does not make any inquiry into the probationer's financial ability to make said payments.

119. SCMP regularly threatens probationers that they will "be arrested" and "go to jail" if they do not comply with the arbitrary requirements of SCMP, including the payment of court fines, court costs, and probation fees, on the payment schedule unilaterally set by SCMP, regardless of whether the probationer has the means to make such payment.

120. SCMP coerces probationers into signing extensions of their probation if they cannot make their payments, under threats of being incarcerated for violating their probation.

121. Probationers are coerced into signing these extensions outside of court, outside the presence of an attorney, without the opportunity to consult an attorney or have an attorney appointed to represent them, even if the probationer has been previously found to be indigent and entitled to counsel from a public defender.

122. SCMP does not make any inquiry into the probationer's ability to pay his or her fees before, during, or after coercing them into signing agreements to extend their probation.

123. Pursuant to Tenn. Code Ann. § 40-35-303(i)(3), nonpayment of supervision fees must be willful in order to be grounds for revocation of probation; however, SCMP does not inform probationers of this.

124. During the time relevant to this Complaint, SCMP was provided with stacks of blank, pre-signed violation of probation warrants signed by Judge Michael Collins. SCMP filled out these blank pre-signed warrants at any time they deemed appropriate without appearing before or consulting with Judge Michael Collins and without any determination of probable cause.

125. Employees of a private company were given the authority to issue arrest warrants against probationers at any time for any reason.

126. SCMP used the threat of these pre-signed warrants to coerce probationers into making payments they could not make and/or agreeing to extend the term of their probation.

127. After these blank warrants have been "issued", Smith County law enforcement executes the warrants, resulting in the arrest and incarceration of probationers while they are at their probation appointment.

**PLAINTIFF'S HISTORY WITH SMITH COUNTY AND SCMP**

128. Plaintiff was charged with simple possession (Tenn. Code Ann. §39-17-418), unlawful drug paraphernalia (Tenn. Code Ann. §39-17-425), and financial responsibility (Tenn. Code Ann. §55-12-139) on March 19, 2019.

129. Plaintiff was taken to jail, held on a $2,500.00 bond, and released the following day on March 20, 2019.

130. Plaintiff pled guilty to simple possession on October 10, 2019 and was sentenced to a suspended sentence of eleven (11) months and twenty-nine (29) days in the county jail; therefore, Plaintiff was placed on probation for eleven (11) months and twenty-nine (29) days. See attached Exhibit A.

21

131. Plaintiff's other charges were dismissed.

132. SCMP required Plaintiff to pay $10.00 per week toward the court imposed fine, court costs, and probation fees.

133. SCMP required Plaintiffs' payments be applied to probation fees first, instead of to his court fine and court costs.

134. Plaintiff did not receive a copy of the rules of his probation. Plaintiff repeatedly asked Probation Officers Lynn Shrum and Jenna Meness for a copy of the rules of probation. Both Probation Officers repeatedly refused to provide him a copy of the Rules and became irritated with him for requesting them.

135. Between October 2019 and February 2020, law enforcement searched Plaintiff's person, Plaintiff's vehicle, and Plaintiff's residence between fifty (50) and sixty (60) times.

136. Between October 2019 and February 2020, law enforcement searched Plaintiff's minor daughter approximately ten (10) times without her consent and without reasonable suspicion.

137. Plaintiff was searched on February 5, 2020, and nothing was found.

138. On February 6, 2020, Plaintiff was driving his vehicle when he was stopped by Deputy Nathan Williams. Deputy Williams demanded to search Plaintiff's car, but Plaintiff declined. Deputy Williams chest bumped Plaintiff, angered him, so Plaintiff refused the search even though he had nothing illegal in his vehicle. The same day, Deputy Williams immediately alerted probation and an Affidavit of Violation of Probation was executed by Probation Officer Jenna Brooks. See attached Exhibit B.

22

139.    As previously stated, SCMP was provided with stacks of blank, pre-signed violation of probation warrants signed by Judge Michael Collins.

140.    SCMP issued a pre-signed warrant bearing Judge Michael Collins signature for Plaintiff's arrest after filling in information regarding Plaintiff's alleged violation of probation.  In the section regarding bond, SCMP included the notation "HWOB", which stands for "Hold without bond".

141.    Plaintiff's warrant was never presented to Judge Michael Collins, nor any other judicial officer, and no finding of probable cause was ever made prior to the warrant being issued.

142.    The arrest warrant was stamped filed at 11:20 a.m. on February 11, 2020.

143.    Plaintiff was arrested on February 7, 2020 and held without bond.

144.    On February 13, 2020, an Order Appointing Legal Counsel was entered, appointing a public defender to represent Plaintiff based on a previous Affidavit of Indigency.  See attached Exhibit C.

145.    On that same day, a Revocation Order was signed by Judge Michael Collins stating "Pled guilty to VOP.  Serve 30 days not day for day.  CTS." See attached Exhibit D.

146.    CTS is used an abbreviation for "Credit Time Served."

147.    The Revocation Order was filed February 14, 2020.

148.    As a result of the Revocation Order, Plaintiff was ordered to serve thirty (30) days in jail, not day for day.  Upon information and belief, Plaintiff served fifteen (15) days.

149.    During his incarceration, Plaintiff lost his job and was left unemployed.

23

150. When Plaintiff advised SCMP that he did not have the financial means to make his weekly $10.00 payments, Probation Officer Jenna Brooks told him "If you don't pay, you go to jail".

151. Probation officers repeatedly told Plaintiff that if he didn't make his payments he would go to jail, even when he informed SCMP he did not have the financial ability to make his payments.

152. Just prior to the expiration of his probation, under threat of incarceration if he did not make his payments, Plaintiff signed a Probation Amendment on August 17, 2020, which extended his probation for an additional eleven (11) months and twenty-nine (29) days. See attached Exhibit E.

153. SCMP told Plaintiff repeatedly that if he did not sign the Probation Amendment he would go to jail.

154. Plaintiff was not given the opportunity to consult an attorney and was not appointed an attorney to represent him prior to signing the Probation Amendment.

155. No hearing regarding Plaintiff's alleged nonpayment ever occurred prior to the entry of the Probation Amendment.

156. No inquiry as to Plaintiff's ability to make payments was made and no determination of whether Plaintiff was indigent was made prior to the entry of the Probation Amendment, despite Plaintiff having executed an Affidavit of Indigency on September 5, 2019 and being found by the Court to be indigent on February 13, 2020.

157. Plaintiff was not informed that non-payment must be willful in order to be found guilty of violating his probation.

158.    The Probation Amendment was signed by a local attorney that Smith County authorized to sign orders in Judge Michael Collins' stead.  The Probation Amendment was deemed an Order of the Court and was filed on August 20, 2020. Shockingly, Plaintiff never even entered the courtroom on the Probation Amendment.

159.    As early as January 2021, the judicial system, including the District Attorney General, was aware of the corrupt practices of SCMP, Judge Collins's pre-signed blank warrants, and that Defendants were actively serving their amended probation, even though the entire process has occurred illegally.

160.    Rather than immediately working to set matters right and release probationers from their illegal amended probation sentences, a "wait and see" approach was taken.

161.    The wait and see approach resulted in Plaintiff remaining on probation for another six months, despite SCMP and the county being made aware of the issues within the probation system.

162.    On June 22, 2021, an order was entered *sua sponte* by Judge Branden Bellar releasing Plaintiff from probation prior to the end date of his extension order, effective immediately. See attached Exhibit F.

163.    This Order was entered on the same date that the case of *Lynn Walker vs. Lynn Shrum, dba Smith County Misdemeanor Probation, vs. Smith County, Tennessee, and vs. Jenna Meness, individually and dba Smith County Misdemeanor Probation*, Case No. 2:21-cv-00025 was filed in the United States District Court for the Middle District of Tennessee.  That case alleged facts nearly identical in nature to the facts alleged herein. Lynn Walker alleged the Defendants in that case, including Smith County and SCMP,

25

violated the Racketeering Influenced and Corruptions Organization Act, violated of the Due Process Clause of the Fourteenth Amendment, violated the Equal Protection Clause, engaged in Unjust Enrichment, and committed Abuse of Process.

164.    Upon information and belief, the Order releasing Plaintiff from probation early was due to the allegations made in *Lynn Walker vs. Lynn Shrum, dba Smith County Misdemeanor Probation, vs. Smith County, Tennessee, and vs. Jenna Meness, individually and dba Smith County Misdemeanor Probation.*

## CAUSES OF ACTION

I.    Count One: RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962 (c) and (d)

165.    Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

166.    The Plaintiff's claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO"), are brought against the Private Probation Defendants and not Smith County.

167.    The Plaintiff is a "person" with standing to sue within the meaning of 18 U.S.C. §§ 1961(3) and l964(c).

168.    Defendant SCMP is a [4]"RICO person" within the meaning of 18 U.S.C. § 1961(3) because it is an entity capable of holding a legal or beneficial interest in property.

169.    Defendant Jenna Meness is a "RICO person" within the meaning of 18 U.S.C. §1963(I) because she is capable of holding a legal or beneficial interest in property.

### i. The RICO Enterprise

170. Defendants SCMP and Meness, together with Smith County and other unnamed conspirators, constitute an association-in-fact, and therefore an enterprise within the meaning of 18 U.S.C. § 1961(4).

171. This RICO Enterprise is an ongoing business relationship with the common purpose of maximizing the collection of costs and fees by SCMP without consideration of the probationer's ability to pay.

172. The RICO Enterprise is engaged in interstate commerce because the Enterprise's activities affect preexisting interstate commerce by extorting money from an individual receiving federal assistance program money, specifically money from the Supplemental Nutrition Assistance Program (SNAP) and the Low Income Home Emergency Assistance Program (LIHEAP).

173. Moreover, Defendants SCMP and Meness extort from numerous private victims money that probationers would have spent on purchasing goods and services in interstate commerce.

174. Defendants SCMP and Meness also use electronic communications and/or the United States mail to communicate with SCMP probationers, including using those means to transmit threat of incarceration and revocation for nonpayment.

175. The members of the RICO Enterprise function as a continuing unit.

176. Private Probation Defendants have violated 18 U.S.C. § 1962(c) because they are associated with an enterprise that is engaged in, or the activities of which affect, interstate commerce and have, directly or indirectly, conducted or participated in the conduct of an enterprise's affairs through a pattern of racketeering activity.

27

177. The Private Probation Defendants have violated 18 U.S.C. § 1962(d) because they have conspired with each other, Smith County, and other unnamed conspirators to violate 18 U.S.C. § 1962(c).

178. Specifically, the Private Probation Defendants conducted or participated in and conspired to conduct the affairs of the RICO Enterprise by engaging in the following predicate acts of racketeering activity under 18 U.S.C. § 1961(1):

a.     Extortion in violation of the Hobbs Act, 18 U.S.C. § 1951;
b.     Extortion in violation of Tenn. Code Ann. § 39-14-112; and,
c.     Extortion in violation of the Travel Act, 18 U.S.C. § 1952.

**B. Predicate Acts**

179. The Private Probation Defendants have, on their own and in conspiracy with other participants in the RICO Enterprise, obtained by threat the various probation fees described in this Complaint, including the weekly fee and the drug-test fee, with intent to deprive probationers of this money.

180. The Private Probation Defendants, individually and in conspiracy with the other participants in the RICO Enterprise, have threatened Plaintiff that if he does not agree to pay money to SCMP, he (a) will be arrested; (b) will be accused by the company of violating the conditions of probation; (c) will face testimony by SCMP against him regarding nonpayment, but without revealing the reasons for nonpayment (including inability to pay); (d) will have his probation revoked; (e) will be sent to jail; (f) will have his probation extended; and (g) will be charged additional fees.

181. These threats are inherently wrongful because they are motivated out of a desire to extort, premised on deception concerning the facts, executed in knowing violation of the legal rights of the victims, and demanded pursuant to an unlawful

contract.

182.    As a result of these unlawful threats, the Plaintiff paid the fees demanded by the Private Probation Defendants, even though doing so resulted in great personal suffering.

### i.    <u>Extortion in Violation of the Hobbs Act, 18 U.S.C. §1951</u>

183.    The Private Probation Defendants have, individually and in conspiracy with the other participants in the RICO Enterprise, obtained fees from Plaintiff without his consent, induced by the wrongful use of fear in violation of 18 U.S.C. § 1951 (the "Hobbs Act").

184.    Plaintiff had to borrow money to pay his utility bills so that he would have enough money to pay his probation fees.

185.    Plaintiff had to make a seventeen (17) hour drive from upstate New York each week just to report to probation and pay his fines.

186.    SCMP never told Plaintiff that his probation could not be violated unless it was willful.

### ii.    <u>Extortion in Violation of Tennessee Code §39-14-112</u>

187.    The Private Probation Defendants have themselves, and in conspiracy with the other participants in the RICO Enterprise, used coercion upon Plaintiff with the intent to obtain the private company's fees from the Plaintiff, in violation of Tenn. Code Ann.§ 39-14-112(a).

188.    The Private Probation Defendants have violated Tenn. Code Ann. § 39-l 4-1 l 2(a) by their continued threats of imprisonment for failure to pay SCMP fees, including after illegal extensions of such probation.

29

189.    Further, the Private Probation Defendants have themselves, and in conspiracy with the other participants in the RICO Enterprise, used coercion upon Plaintiff with the intent to unlawfully restrict Plaintiff's exercise of his state and federal rights, in violation of Tenn. Code Ann.§ 39-14-112(b).

190.    The Private Probation Defendants have violated of Tenn. Code Ann. § 39-14-112(b) with their continued threats of imprisonment for violating SCMP rules, such as refusing invasive and suspicionless urine drug tests, including after illegal extensions of such probation.

### iii.    Extortion in Violation of the Travel Act, 18 U.S.C. § 1952

191.    The Private Probation Defendants have, individually and in conspiracy with the other participants in the RICO Enterprise, used the mail and/or facilities in interstate commerce to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of an unlawful activity, extortion scheme, in violation of 18 U.S.C. § 1952(a)(3).

192.    The Private Probation Defendants used the mail and/or facilities in interstate commerce to threaten probationers in Smith County, including the Plaintiff, to continue payments to the private company by mailing and/or communicating these threats via telecommunication with probationers.

193.    Operating a private probation service in violation of Tennessee laws, the administrative Rules of the Tennessee Private Probation Service Council, and engaging in unlawful activities such as illegal extensions and extortion to achieve such extensions constitutes an unlawful activity as required under 18 U.S.C § 1952(b).

**C.** **Pattern of Racketeering Activity**

194. The Private Probation Defendants and other participants in the RICO Enterprise have engaged in the racketeering activity described in this Complaint repeatedly since 1999, when SCMP first began operating as a private probation service.

195. These racketeering acts are part of the enterprise's regular way of doing business.

196. The racketeering acts of the Private Probation Defendants and the other participants in the RICO Enterprise have a similar purpose: to maximize the collection by the clerk of court fines, costs, and by SCMP of their private fees without consideration of the individual's ability to pay while violating probationers' legal rights.

197. The racketeering acts of the Private Probation Defendants and the other participants in the RICO Enterprise have yielded similar results and caused similar injuries to Plaintiff: the Plaintiff has, among other things, been required to pay fees to Defendants SCMP and Meness, and has paid those fees because of these Defendants' unlawful conduct.

198. Moreover, the Plaintiff was subject to threats of physical confinement and physically intrusive and humiliating drug tests for the purpose of generating financial profit for the companies as well as relinquishing his federal and state rights through onerous and unlawful probation conditions.

199. As set forth in the preceding paragraphs, the racketeering acts have similar participants: Defendants SCMP and Meness, County officials, and the other participants in the RICO Enterprise.

200. As set forth in the preceding paragraphs, Private Probation Defendants

31

and the other participants in the RICO Enterprise, through the RICO Enterprise, directed their racketeering activities at similar victims: Plaintiff specifically, and also more generally all Smith County misdemeanor probation supervisees assigned to SCMP.

201.    As set forth in the preceding paragraphs, the racketeering acts of Private Probation Defendants and other participants in the RICO Enterprise were committed in similar ways, namely by extorting the Plaintiff and, more generally, all Smith County misdemeanor  probationers who cannot afford to pay their entire fine, fees, restitution, and costs by the end of their sentence, into paying additional court debts and supervision fees to the company.

   D. **Injury**

202.    As a direct and proximate result of the willful, knowing, and intentional acts of the Private Probation Defendants and other participants in the RICO Enterprise, as discussed in this Complaint, the Plaintiff has suffered injuries to his property.

203.    Plaintiff has been subjected to probation fees and surcharges paid to Defendant SCMP, and was forced to continue paying these fees even when he could not afford to do so, resulting in economic harm to himself and his family.

204.    During his illegally extended probation, Plaintiff was subjected to wrongful incarceration for "Violations of Probation" by the Private Probation Defendants and other participants in the RICO Enterprise, resulting in an illegal incarceration and deprivation of liberty for fifteen (15) days.

205.    The Plaintiff is entitled to an award of damages in an amount to be determined at trial, including treble damages and attorneys' fees and costs associated with this action.

 II.    <u>COUNT TWO:  Defendants' Use of a Private Actor with a Personal Financial Stake in the Outcome of Judicial Proceedings and Probation Case Decisions Violates</u>

<u>Plaintiff's Right to a Neural Probation Officer Under the Due Process Clause of the Fourteenth Amendment.</u>

206.    Plaintiff hereby incorporates the preceding paragraphs by reference as if fully rewritten herein.

207.    Defendants, under color of state law, caused Plaintiff, a citizen of the United States, to be deprived of rights, privileges, and immunities secured by the United States Constitution and the laws of the United States, without due process of law.

208.    Plaintiff brings this claim pursuant to 42 U.S.C. § 1983 and *Monell v. Department of Social Services,* 436 U.S. 658 (1978).

209.    SCMP, its employees, and Smith County enacted policies, customs, and/or procedures that permit non-neutral actors with direct pecuniary interest in the outcome of a probationer's case to dictate the outcomes of those cases.

210.    As a direct result of the policies, customs, and/or procedures enacted by these Defendants, Plaintiff is unfairly deprived of his constitutional right to due process of law under the United States Constitution. *See* U.S. Const. amend. XIV§ I.

211.    The Due Process Clause of the Fourteenth Amendment prohibits government officials exercising judicial or enforcement functions from having a personal financial interest in the cases prosecuted and decided by them.

212.    The Due Process Clause of the Fourteenth Amendment was violated by the County's arrangement with a private, for-profit business entity to perform a traditional court function, probation, making the resolution of Plaintiffs case contingent on the demands, advice, recommendations, negotiations, discretionary decisions, enforcement actions, testimony, and representations of this private entity.

213.    Under this scheme, SCMP and its employees influence the conditions

33

imposed for probationers under their supervision, determine if those conditions have been violated, and decide to initiate revocation proceedings.

214.    SCMP and its employees make rules and decide whether to petition for revocation for violations.

215.    SCMP and its employees serve as the main witness at the violation proceedings, where the allegations of SCMP employees are often the sole evidence presented.

216.    SCMP employees communicate with the judge to recommend a resolution in the case.

217.    SCMP employee recommendations include whether the probationer should be returned to supervised probation for an extended period of time (and charged additional fees) and/or incarcerated.

218.     In contrast to the longstanding, traditional role of a probation officer, such as the role performed by Tennessee State Probation Officers and United States Probation Officers, the private company and its employees have a direct financial stake in every decision they make regarding case supervision, enforcement of conditions and rules, and revocation of probation.

219.    The private company has a personal financial interest in conducting their job as probation officers in a way that maximizes their personal profit rather than as a neutral court officer.

220.    Because these non-neutral actors profit significantly from the decisions about whether to keep probationers on supervised probation, what conditions to require, what information to provide probationers about their rights and obligations, how to

34

enforce those conditions, what testimony to provide during revocation hearings, and what sanction to recommend, there is a clear risk that those financial interests will affect their judgment regarding those decisions.

221. These financial interests impact every decision the Private Probation Defendants make.

222. Because a private entity has a significant personal financial interest in how these cases are managed and resolved, unlike a traditional neutral judicial actor or probation department, this practice violates the longstanding due process restrictions against such self-interested financial arrangements in American courts of justice.

223. The Defendants directly and proximately caused these violations of Plaintiff's rights.

224. The Defendants knew or reasonably should have known that depriving individuals of property under color of law, without due process or legal authority for such deprivation, violates Plaintiffs constitutional rights.

225. The Defendants caused, authorized, condoned, ratified, approved, and knowingly participated in the policies and practices as described above.

226. The Defendants' actions were willful, deliberate, and malicious, and involved reckless or callous indifference to Plaintiffs rights, and should be punished and deterred by an award of punitive or enhanced damages and Plaintiffs attorney's fees against Defendants as permitted by law.

III. COUNT THREE: DEFENDANT'S USE OF JAIL, THREATS OF JAIL TIME, AND AN ONEROUS PROBATION SYSTEM TO COLLECT DEBTS OWED TO THE COUNTY VIOLATES EQUAL PROTECTION BECAUSE IT IMPOSES UNDULY HARSH AND PUNITIVE RESTRICTIONS ON DEBTORS WHOSE CREDITOR IS THE GOVERNMENT AS COMPARED TO THOSE WHO MONEY TO PRIVATE COLLECTORS.

227.    Plaintiff hereby incorporates the preceding paragraphs by reference as if fully rewritten herein.

228.    Defendants, under color of state law, caused Plaintiff, a citizen of the United States, to be deprived of rights, privileges, and immunities secured by the United States Constitution and the laws of the United States, without due process of law.

229.    Plaintiff brings this claim pursuant to 42 U.S.C. § 1983 and *Monell v. Department of Social Services,* 436 U.S. 658 (1978).

230.    The United States Supreme Court has held that when governments seek to recoup costs from indigent defendants, they may not take advantage of their position-including their access to police, jails, and courts of law-to engage in unduly restrictive methods of collection solely because the debt is owed to the government rather than a private creditor. *See James v. Strange,* 407 U.S. 128, 135-39 (1972).

231.    The Defendants enacted policies, customs, and/or procedures that coerced payment of debts owed to the government.

232.    Not only do the County and SCMP keep indigent people on overly onerous probation supervision lasting years, but by imposing imprisonment, repeated threats of imprisonment, onerous probation conditions, revocation or suspension of drivers' licenses, intrusive drug tests, extra fees, and other restrictions on Plaintiff's liberty, the County and SCMP take advantage of their control over the machinery of the County jail and the prosecutorial, court, and police systems to deny debtors the statutory protections that every other Tennessee debtor may invoke against a private creditor.

233.    The County deprives Plaintiff of these protections even though Tennessee

law explicitly states that the debts owed to the County are subject to Tennessee law on civil judgments. *See* Tenn. Code Ann. § 40-24-105(a).

234.    Other non-government creditors are not permitted to incarcerate debtors, threaten to incarcerate them, or compel their repeated arrest and court appearances for nonpayment.

235.    Defendants' coercive debt-collection system constitutes invidious discrimination and violates fundamental principles of equal protection of the laws.

IV.    <u>COUNT FOUR: DEFENDANTS VIOLATE EQUAL PROTECTION AND DUE PROCESS BY PLACING AND KEEPING PEOPLE ON SUPERVISED PROBATIONS SOLELY BECAUSE THEY CANNOT AFFORD TO PAY COURT DEBTS AND PROBATION SUPERVISION FEES</u>

236.    Plaintiff hereby incorporates the preceding paragraphs by reference as if fully rewritten herein.

237.    Defendants, under color of state law, caused Plaintiff, a citizen of the United States, to be deprived of rights, privileges, and immunities secured by the United States Constitution and the laws of the United States, without due process of law.

238.    Plaintiff brings this claim pursuant to 42 U.S.C. § 1983 and *Monell v. Department o/Social Services,* 436 U.S. 658 (1978).

239.    Smith County and the Private Probation Defendants have a policy and practice of placing and keeping individuals on supervised probation with SCMP solely because they cannot afford to pay their court debts and probation fees, ·without an inquiry to determine whether the failure to pay was willful.

240.    If a probationer can afford to pay his debts in full, he will not be subjected to continued supervised probation by the private company.

241.    If the probationer is too poor to pay his debts, the County and the Private

Probation Defendants have a policy and practice of keeping that probationer on supervised probation, including forcing the probationer to abide by conditions agreed upon by the company and the County.

242.   These conditions substantially restrict a probationer's liberty and subject him to arrest and imprisonment if those conditions, including payment of additional fees to the private company, are violated.

243.   This policy and practice of differing punishments based solely on wealth status violates Due Process and Equal Protection

V.     COUNT FIVE:  UNJUST ENRICHMENT

244.   Plaintiff hereby incorporates the preceding paragraphs by reference as if fully rewritten herein.

245.   Private Probation Defendants, though acting under color of state law as defined by 42 U.S.C. § 1983, are not employees of a government entity as defined by Tenn. Code Ann. § 29- 20-107, and therefore are not entitled to state governmental immunity under the Tennessee Governmental Torts Liability Act, Tenn. Code Ann. § 29-20-101 *et. seq.*

246.   Private Probation Defendants took and converted to their own use monetary payments from Plaintiff, thereby conferring a benefit upon the Private Probation Defendants by the Plaintiff.

247.   The Private Probation Defendants appreciated such benefit by retaining the Plaintiff's monetary payments.

248.   Because of the use of compulsion and violations of federal and state law used to obtain such benefit, it would be inequitable for Private Probation Defendants to

38

retain Plaintiffs monetary payments. *See Freeman Indus., LLC v. Eastman Chem. Co.,* 172 S.W.3d 512, 525 (Tenn. 2005).

249.     Under the circumstances presented here, Private Probation Defendants' retention of Plaintiffs money would result in unjust enrichment.

VI.     <u>COUNT SIX:  ABUSE OF PROCESS</u>

250.     Plaintiff hereby incorporates the preceding paragraphs by reference as if fully rewritten herein.

251.     Private Probation Defendants, though acting under color of state law as defined by 42 U.S.C. § 1983, are not employees of a government entity as defined by Tenn. Code Ann.§ 29- 20-107, and therefore are not entitled to state governmental immunity under the Tennessee Governmental Torts Liability Act, Tenn. Code Ann.§ 29-20-101 *et seq.*

252.     Defendants abused the legal process by seeking arrest warrants and probation revocation judgments against Plaintiff with the existence of an ulterior motive, specifically to collect additional fees. *See Ball ex rel. Snyder v. Incard, .Merrill, Cullis, Timm, Furen* & *Ginsburg, P.A.,* 986 S.W.2d 550, 555 (Tenn. 1999); *Priest v. Union Agency,* 125 S.W.2d 142, 143 (Tenn. 1939).

253.     When probationers are unable to pay what SCMP demands, at best the company files a revocation petition and secures arrest warrants. At worst, the company fills out an arrest warrant pre-signed by Judge Michael Collins and executes it with the aid of local law enforcement without ever presenting the warrant to a statutorily authorized individual with the authority to grant such warrant.

254.     Moreover, the private company through written documents, testimony. and

informal *ex parte* conversations with Smith County judges seeks to secure violation-of-probation judgments which extended probationer's sentence with SCMP.

255.    The private company refuses to convert a person's supervised probation to unsupervised probation unless he has paid all of his debts.

256.    The private company seeks illegal violation-of-probation extensions or arrest warrants for nonpayment even when it knows that the probationer did not pay because he was too poor to pay.

257.    The private company and the County use these warrants as a way to extort additional money from impoverished probationers who are scared of being arrested and imprisoned.

258.    The private company and the County engage in all of these activities, and threaten probationers with arrest, imprisonment, and revocation if they do not make payments, with the ulterior motive of securing the additional court costs and fees that come as a matter of County policy and practice with each revocation violation.

259.    The private company also engages in an abuse of process in its probation supervision by using the order of probation not to do justice and assist probationers, but for the ulterior motive of making profit by assessing fees, performing drug tests, and threatening to seek violation-of-probation warrants to increase probationers' payments and pad their own wallets.

260.    The private company and County's aforementioned actions are precisely the "perverted" process actionable as an abuse of process claim. *Priest,* 125 S.W.2d at 143.

VII.    <u>COUNT SEVEN:  42 U.S.C. § 1983: PLAINTIFF WAS ARRESTED AND INCARCERATED WITHOUT PROBABLE CAUSE IN VIOLATION OF THE FOURTH</u>

261. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

262. At all times relevant to this Complaint, Defendants were acting under color of state law.

263. At all times relevant to this Complaint, Defendants acted pursuant to policies and customs of Defendants.

264. SCMP issued an arrest warrant pre-signed by Judge Michael Collins without appearing before or consulting with Judge Michael Collins or any other judge or judicial officer.

265. No inquiry or determination of whether probable cause existed for the issuance of the warrant for Plaintiff's arrest was ever made by any judge or judicial officer.

266. After the arrest warrant was issued on February 6, 2020, the Smith County Sheriff's Department executed the warrant on February 7, 2020, resulting in the arrest and incarceration of Plaintiff.

267. Pursuant to the notation of "HWOB" made by SCMP on the warrant, Plaintiff was held without bond until he could see Judge Collins the following day.

268. As a result of the arrest, Plaintiff was incarcerated for fifteen (15) additional days after pleading guilty to the charges contained in the arrest warrant.

269. Ultimately Plaintiff was incarcerated for fifteen (15) days based on the pre-signed arrest warrant issued by SCMP.

270. In addition to Plaintiff's incarceration, Plaintiff served a total of nineteen (19) months on supervised probation because he was too poor to pay his fine, costs, and fees.

41

271.    Defendants arrested and incarcerated Plaintiff without probable cause in violation of the Fourth Amendment to the United States Constitution and Article I Section 7 of the Tennessee Constitution.

VIII.    COUNT EIGHT: 42 U.S.C. § 1983: DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO DUE PROCESS OF LAW AND EQUAL PROTECTION IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 8 OF THE TENNESSEE CONSTITUTION.

272.    Plaintiff hereby incorporates the preceding paragraphs by reference as if fully rewritten herein.

273.    At all times relevant to this Complaint, Defendants were acting under color of state law.

274.    At all times relevant to this Complaint, Defendants acted pursuant to policies and customs of Defendants.

275.    In violation of Tennessee law and the Rules of Tenn. Private Probation Council Smith County illegally contracted with SCMP to provide probation services for all misdemeanor probations in Smith County, Tennessee.

276.    SCMP coerced Plaintiff to sign a Probation Amendment, extending his probation for eleven (11) months and twenty-nine (29) days, without inquiry into Plaintiff's ability to pay, outside of a judicial setting, without allowing Plaintiff to consult an attorney, and without an attorney being appointed to him despite a prior finding of indigency by the Court.  No hearing regarding Plaintiff's nonpayment ever occurred prior to the entry of the Probation Amendment.  The Probation Amendment was signed by a local attorney that Smith County authorized to sign orders in Judge Michael Collins' stead and was deemed an Order of the Court.

42

277.    Plaintiff remained on probation for ten (10) additional months as a result of the Probation Amendment prior to being released from probation early based on the filing of a federal lawsuit bearing facts nearly identical to this Complaint.  Plaintiff incurred additional fees as a result of the extended probation.

278.    Defendants denied Plaintiff his right to due process of law and equal protection in violation of the Fourteenth Amendment to the United States Constitution and Article I Section 8 of the Tennessee Constitution.

## DAMAGES

279.    Plaintiff hereby incorporates the preceding paragraphs by reference as if fully rewritten herein.

280.    As a result of Defendants violating Plaintiff's constitutional rights, under color of state law, as described hereinabove, Plaintiff was incarcerated for fifteen (15) days and remained on probation for a total of nineteen (19) months, all the while being subjected to searches and traffic stops for the purposes of a "probation search".

281.    As a result of Defendants violating Plaintiff's constitutional rights, under color of state law, as described hereinabove, Plaintiff's probation was unlawfully extended for eleven (11) months and twenty-nine (29) days.

282.    As a result of Defendants violating Plaintiff's constitutional rights, under color of state law, as described hereinabove, Plaintiff incurred additional fees and fines payable to SCMP.

283.    Plaintiff is entitled to monetary damages, including punitive damages, in an amount to be determined by a jury.

284. Plaintiff is entitled to recover his attorney fees, court costs, and other expenses.

WHEREFORE, the Plaintiff demands a jury trial for all issues so appropriate and requests that this Court issue the following relief:

1. A declaratory judgment that subjecting Plaintiff to Defendants' conduct as alleged in the Counts listed above is unlawful;

2. An order and judgment permanently enjoining the Defendants from enforcing the above-described unconstitutional and illegal policies and practices against the Plaintiff;

3. A judgment compensating the Plaintiff for the damages he suffered as a result of the Defendants' unconstitutional and unlawful conduct

4. An award of monetary damages to be determined at trial, including punitive damages, in an amount to be determined by a jury;

5. A judgment granting the treble and punitive damages authorized by statute based on the Defendants' willful and egregious violations of the law;

6. An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and 18 U.S.C. *§* 1964; and,

7. For any other relief, both general and specific that this Honorable Court deems just and proper.

<u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury on all claims so triable.

44

Respectfully submitted,

ROBIN MOORE & ASSOCIATES, PLLC

/s/ Robin C. Moore
Robin C. Moore, BPR #32995
Attorney for Plaintiff
220 Main Street North
PO Box 182
Carthage, TN 37030
P:  615-735-1100
F:  615-735-2598
robin@robinmoorelaw.com